IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ENERGY CAPITAL SERVICES,
LLC, an Ohio based Delaware
limited liability company,

           Plaintiff,

v.                                         CIVIL ACTION NO. 5:04-0670

LAND AND MINERAL DEVELOPMENT,
LLC, a West Virginia limited liability company,

           Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's motion for summary judgment or judgment on the pleadings [Docket 21] and the defendant's motion for summary judgment [Docket 23]. For the foregoing reasons, the court **FINDS** that genuine issues of material fact remain and **DENIES** both parties' motions for summary judgment and the plaintiff's motion for judgment on the pleadings.

**I.    Background**

On September 16, 2003, Energy Capital Services, LLC (ENCAP) and Land & Mineral Development, LLC (Land & Mineral), entered into a contract known as the Agreement of Sale of Mineral Rights (Agreement). This Agreement involves the sale of approximately 83,000 acres of mineral rights owned by Land & Mineral and located in Pocahontas and Greenbrier Counties, West Virginia. The Agreement provides that the seller agrees to sell and the Buyer agrees to purchase all of the Seller's right, title and interest in the mineral rights described above. The

total purchase price to be paid by ENCAP to Land & Mineral for the purchase of the mineral rights is the sum of $1,400,000.000, together with various service charges and interest payments. The Agreement sets forth a payment schedule, with specific sums due on September 16, 2003, October 10, 2003, November 10, 2003, and December 13, 2003. December 13, 2003, was the closing date for the mineral rights. On that date, the Agreement required ENCAP to make a payment to Land & Mineral in the amount of $385,000.000, to be credited toward the purchase price of the mineral rights. On that same date, ENCAP was also to deliver to Land & Mineral a Cognovit Promissory Note executed by the Buyer, containing provisions of payments to Land & Mineral on or before December 31, 2003 and a final payment made on or before June 30, 2004.

      The Agreement further provides that: "The Buyer and Seller agree that the purchase will be consummated as follows: 4.1 <u>Title Transfer</u>. The Seller agrees to convey title to the Property to the Buyer by general warranty deed on or before the close of business on the Closing Date, provided that all required payments have been made, and the beneficial ownership and risk of loss of the property will pass from the Seller to the Buyer upon delivery of the deed." At Paragraph 4.3 of the Agreement, the parties agree that "At Closing, the Seller will deliver or cause to be delivered to the Buyer a general warranty deed in a form satisfactory to Buyer's attorney executed by the Seller, conveying to the Buyer marketable fee simple title to all of the Seller's right, title and interest in and to all of the Property, together with such additional documents as may be reasonably required by the Buyer to consummate the sale of the Property."

      Although it is unclear from the pleadings and motions of both parties, it appears that on the closing date, Land & Mineral provided ENCAP with a deed, prepared by Land & Mineral's attorney, which contained no warranty of title. ENCAP apparently accepted the deed on the

closing date and never objected to the language in the deed until it filed this action. Pursuant to the terms of the Second Amended Payment Schedule Agreement, ENCAP returned the unfiled deed to Land & Mineral.

At some point after the parties entered into the Agreement, ENCAP was unable to make several of the installment payments that were due to Land & Mineral. According to the defendant, ENCAP requested several extensions on payment deadlines, which Land & Mineral agreed to provide on the condition that the parties amend the original Agreement to establish new payment deadlines and additional default terms. ENCAP and Land & Mineral executed two amendments to the Agreement, the first on December 30, 2003, and the second on February 27, 2004. The Second Amended Payment Schedule Agreement (Second Amendment) includes a provision that required ENCAP to return the deed to the property that it had acquired at the closing. This Second Amendment also provides that if ENCAP breached any of the remaining payment terms, it would forfeit any right to the Mineral Rights.

The defendant alleges that ENCAP breached the terms of the Agreement, as amended by the First and Second Amendments, when it failed to make an installment payment that was due on or before April 30, 2004. According to the defendant's motion, Land & Mineral declared ENCAP to be in breach of the Agreement after it failed to make the April payment within a reasonable period of time. Land & Mineral then "exercised its contractual right to retain the Mineral Rights, along with the payments that had been made by ENCAP as liquidated damages arising from ENCAP's breach." ENCAP responded by filing this civil action and a Notice of *Lis Pendens* with regard to the Mineral Rights. Land & Mineral has counterclaimed with breach of contract and wrongful filing of a civil action and Notice of *Lis Pendens* claims.

**II.     Analysis**

Federal Rule 12(c) of the Federal Rules of Civil Procedure states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Viewing all of the facts in a light most favorable to the non-moving party, the district court may only grant the motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P*. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### A. ENCAP's Motion for Summary Judgment or Judgment on the Pleadings

In its pleadings and motion for summary judgment or judgment on the pleadings, ENCAP argues that this court should declare the Agreement void because of an alleged mistake in the terms of the Agreement as to the type of title that was to be conveyed to ENCAP. ENCAP argues that the alleged mistake existed where the terms of the Agreement provided for a general warranty deed, but Land & Mineral did not intend or was not able to provide such a deed. Specifically, ENCAP argues that "we need not pursue whether the alleged misstatement in the contract was mistake or fraud. It is enough that the parties agree that there is a significant difference between the understanding and expectation of the parties as to the terms of the contract . . . . your plaintiff would argue that the Court could rule that there was no contract for either failure to reach a meeting of the minds on all essential terms or failure of consideration."

In support of this argument, ENCAP cites an email correspondence that was sent from Land & Mineral's counsel to W. David Henson, Managing Member of ENCAP on August 19, 2004. In this email, counsel for Land & Mineral stated that: "I did become aware of one mistake I made in the documents that I prepared earlier. Specifically, I made mention in the Revised Agreement of Sale of Mineral Rights of our transferring the title through a general warranty deed. What I should have said was that we would transfer the title through a quit-claim deed wherein we will transfer all of Land & Mineral Development, LLC's interest in the subject mineral rights to [ENCAP]. This is the same type of deed that we provided to you earlier. We cannot provide a general warranty deed because we do not have title insurance on the subject property."

In its response and cross-motion for summary judgment, Land & Mineral argues that ENCAP has failed to establish that there was any mutual material mistake made by the parties with respect to the contract at issue which would entitle ENCAP to declare the contract void. Land & Mineral argues that contrary to the statement of the plaintiff, the parties are not in agreement that there was a mistake in the terms of the contract. Instead, Land & Mineral argues that ENCAP has taken its email correspondence out of context and offers the affidavit testimony of Walter Allen, Managing Member of Land & Mineral, to explain that: "The Agreement includes a provision that required Land & Mineral to transfer the Mineral Rights to ENCAP through a general warranty deed if, and only if, ENCAP made all of the required payments under the Agreement. There was no mistake made in including that general warranty provision in the original Agreement, as it read exactly as we had agreed."

Although the above email specifically refers to a Revised Agreement of Sale of Mineral Rights, the court is uncertain which document this is–does the email refer to the Agreement of Sale as it existed in its final version or does it refer to the later Amendments to the Agreement? The plaintiff appears to argue that the email admits a mistake in the Agreement, where the defendant argues that email referred to a mistake in the settlement documents. Because the language in the email does not specifically track the language used in either the heading of the Agreement or the heading of either the First or Second Amended Payment Schedule Agreements, the court is uncertain which document may have contained the mistake.

Land & Mineral asserts that there was never a mistake on its part with regards to the general warranty language in the original Agreement. The court is troubled, however, by the language in the email which suggests that Land & Mineral may not have intended or been able to

-6-

provide a general warranty deed at any point in the life of the Agreement. Even if the email does not refer specifically to the Agreement, the language suggests that the Agreement may have also contained a mistake. For example, the email says "What I should have said was that we would transfer the title through a quit-claim deed. . . . This is the same type of deed that we provided to you earlier. We cannot provide a general warranty deed because we do not have title insurance on the subject property." Accordingly, the court is unable to determine whether or not there was any mistake or misrepresentation in the Agreement and whether any potential mistake was of the type that might render the contract voidable. The court is further uncertain as to whether any potential mistake in the contract might have been one of simple typographical error. The court is further missing important information regarding the exchange, acceptance, and return of the deed. Furthermore, although the plaintiff hints that in the absence of mistake there might be a misrepresentation or fraud in the inducement problem with the Agreement, it does not provide the court with any facts necessary to this determination. Thus, there are questions of law that cannot be resolved on the pleadings and facts before the court. Whether construed as a motion for judgment on the pleadings or a motion for summary judgment, ENCAP has not met its burden under either standard. Accordingly the court **DENIES** the plaintiff's motion for judgment on the pleadings or for summary judgment [Docket 21].

      Land & Mineral also asks this court to award it summary judgment on its breach of contract and wrongful filing counterclaims. Land & Mineral argues that ENCAP failed to make a payment that was due under the Second Amended Payment Schedule Agreement on or before April 30, 2004. As a consequence, Land & Mineral argues that it is entitled to retain the payments that ENCAP had made, pursuant to the provision in the Agreement.

For the reasons stated above, the court **FINDS** that there remains a genuine issue of material fact as to any possible mutual mistake, misrepresentation, or fraud in the Agreement. Accordingly, the court is unable to grant summary judgment in Land & Mineral's favor at this time. Thus, the court **DENIES** the defendant's cross motion for summary judgment [Docket 23].

### III. Conclusion

For the above reasons, the court **FINDS** that there remain genuine issues of material fact and **DENIES** both parties' motions for summary judgment [Dockets 21 and 23] and the plaintiff's motion for judgment on the pleadings [Docket 21]. The court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented party.

ENTER: June 1, 2005

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE